**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| James Reid, Veronica Bramlett, and Tami Johnson, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>14th & Park, LLC, Hardeman Real Estate, LLC, and Peachtree Property Residential, LLC,<br><br>Defendants. | CASE NO.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## Nature of this Action

1. James Reid, Veronica Bramlett, and Tami Johnson (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against 14th & Park, LLC ("14th & Park"), Hardeman Real Estate, LLC ("Hardeman RE"), and Peachtree Property Residential, LLC ("PPR", and collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2. Upon information and belief, Defendants routinely violate 47 U.S.C. § 227(b)(1)(A)(iii) by using an artificial or prerecorded voice to place non-emergency calls to telephone numbers assigned to a cellular telephone service without prior express consent.

3. Specifically, Defendants routinely and repeatedly call consumers' cellular telephone numbers—like Plaintiffs—while leaving artificial or prerecorded voice messages to suspected homeowners in an effort to either purchase their property or gauge their interest in Defendants' real estate services.

4. Additionally, upon information and belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by placing more than one advertisement or marketing telephone call to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

**Parties**

5. Plaintiff Reid is a natural person who at all relevant times resided in Decatur, Georgia.

6. Plaintiff Bramlett is a natural person who at all relevant times resided in Austell, Georgia.

7. Plaintiff Johnson is a natural person who at all relevant times resided in Stone Mountain, Georgia.

8. 14th & Park is a Georgia limited liability company, which operates a real estate marketing and lead generation business headquartered in Roswell, Georgia.

9. PPR is a Georgia limited liability company, which operates a real estate

marketing and lead generation business headquartered in Atlanta, Georgia.

10. Hardeman RE is a Georgia limited liability company, which operates a real estate marketing and lead generation business headquartered in Atlanta, Georgia.

11. Upon information and belief, Hardeman RE is owned and operated by Tim Hardeman, a Georgia-licensed real estate broker whose real estate license is attached to Hardeman RE.

12. According to the Georgia Real Estate Commission, Hardeman RE has at least five licensed real estate agents, including Stefan Walsh, Andrew Polak, Frederick Bailey, and Daniel Halliday, among others.

13. Upon information and belief, Defendants share common management and employees, and PPR and 14th & Park share principal offices.

**Jurisdiction and Venue**

14. This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3), 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

15. Venue is proper before this Court under 28 U.S.C. § 1391(b)(1) as Defendants reside in this District.

16. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(2) as all three Plaintiffs reside in this district and a significant portion of the events giving rise to this action occurred in this district.

17. In particular, Defendants directed calls, text messages, and voice messages to Plaintiffs' telephones in this district, and Plaintiffs each received Defendants' text messages and voice messages in this district.

**Factual Allegations**

*James Reid*

18. Plaintiff Reid is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number—(404) 454-XXXX.

19. Plaintiff Reid uses his cellular telephone as his personal residential telephone number.

20. In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC Registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

21. Plaintiff Reid registered his cellular telephone number with the DNC Registry on October 3, 2006, and has maintained that registration through the present date.

22. Beginning in 2024, and continuing on an intermittent basis, Plaintiff Reid began receiving text messages on his cellular telephone from several telephone numbers, including (770) 706-4955 and (770) 706-4949, asking "Richard" about selling a property:







23. Plaintiff Reid did not recognize the sender of these text messages, does not recognize the "Richard" referenced in the text messages, and does not go by the name of "Richard."

24. Plaintiff Reid did not request any assistance or services to sell his home, as referenced in the subject text messages.

25. Plaintiff Reid is not, and was not, interested in selling his home, and

does not even own the home referenced in the messages.

26. Plaintiff Reid did not recognize the names or phone numbers associated with these messages, and had not made any inquiries regarding the purchase or sale of real estate.

27. Plaintiff Reid is not, and was not, interested in Defendants' services or marketing.

28. Upon information and belief, Plaintiff Reid believes he may have received additional calls or text messages from Defendants.

*Veronica Bramlett*

29. Plaintiff Bramlett is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(404) 276-XXXX.

30. Plaintiff Bramlett uses her cellular telephone as her personal residential telephone number.

31. Plaintiff Bramlett registered her cellular telephone number with the DNC Registry on April 4, 2013, and has maintained that registration through the present date.

32. Beginning in 2025, and continuing on an intermittent basis, Plaintiff Bramlett received numerous telephone calls from a rotating series of telephone numbers, with numerous prerecorded voice messages delivered to her cellular telephone.

33. In these prerecorded voice messages, the caller identified themselves as "Alex James" and inquired whether Plaintiff Bramlett would be willing to sell her property to the caller or otherwise use their real estate services:







34. Samples of these voice messages can be found HERE.[1]

35. Plaintiff Bramlett did not recognize the sender of these calls and voice

---

[1] The second voicemail screenshot depicted reflects a voice message that was delivered to Plaintiff Bramlett on March 20, 2025.

messages.

36. Plaintiff Bramlett did not request any assistance or services to sell her home.

37. Plaintiff Bramlett is not, and was not, interested in selling her home.

38. Plaintiff Bramlett did not recognize the names or phone numbers associated with these messages, and had not made any inquiries regarding the purchase or sale of real estate.

39. Plaintiff Bramlett is not, and was not, interested in Defendants' services or marketing.

40. Upon information and belief, Plaintiff Bramlett believes she may have received additional telephone calls and voice messages from Defendants.

*Tami Johnson*

41. Plaintiff Johnson is, and has been at all times relevant to this action, the regular and sole user of her cellular telephone number—(646) 207-XXXX.

42. Plaintiff Johnson uses her cellular telephone as her personal residential telephone number.

43. Plaintiff Johnson's cellular telephone number has been registered with the DNC Registry since September 4, 2010, and she also sought to register her telephone number on the DNC Registry in 2019—at which point she received confirmation that her phone was already registered—and she has maintained that

registration through the present date.

44. Beginning in 2025, and continuing on an intermittent basis, Plaintiff Johnson received numerous telephone calls from a rotating series of telephone numbers, with numerous prerecorded voice messages delivered to her cellular telephone.

45. In these prerecorded voice messages, the caller identified themselves as "Alex James" and inquired whether Plaintiff Johnson would be willing to sell her property or otherwise use their real estate services:







46. Samples of these voice messages can be found <u>HERE</u>.

47. Plaintiff Johnson did not recognize the sender of these calls and voice messages.

48. Plaintiff Johnson did not request any assistance or services to sell her home.

49. Plaintiff Johnson is not, and was not, interested in selling her home.

50. Plaintiff Johnson did not recognize the names or phone numbers associated with these messages, and had not made any inquiries regarding the purchase or sale of real estate.

51. Plaintiff Johnson is not, and was not, interested in Defendants' services or marketing.

52. Upon information and belief, Plaintiff Johnson believes she may have received additional telephone calls and voice messages from Defendants.

*Defendants' Business, and Common Allegations to All Plaintiffs*

53. All of the known communications to Plaintiffs indicate they are from an "Alex" at 14th & Park.

54. Upon information and belief, 14th & Park is a real estate investor that seeks to solicit homeowners to sell their property to it, or use Defendants' real estate services in a real estate property sale transaction.

55. In doing so, 14th & Park offers to purchase homeowners' properties for cash, offering to take care of all aspects of the transaction to facilitate a quick transaction.

56. 14th & Park necessarily offers to pair numerous services offered by a real estate agent—appraising the fair market value of the property, arranging for title and escrow services, preparing and completing purchase paperwork, and connecting the homeowner with potential third-party buyers—with its communications to

Plaintiffs.[2]

57. 14th & Park's website, www.14thpark.net, is a real estate-related website that purports to buy homes from interested consumers, while also offering additional ancillary services to facilitate that process.

58. Prior to receiving the above calls, Plaintiffs did not previously interact with the website www.14thpark.net.

59. In its website, 14th & Park purports to pair numerous services with its offers to buy Plaintiffs' properties, but it also invites customers who are looking to buy properties as well.[3]

60. Mr. Hardeman is prominently displayed on 14th & Park's website, and, upon information and belief, Mr. Polak and Mr. Halliday—employees of Hardeman RE and PPR—are also depicted in the same photograph.[4]

61. 14th & Park's website includes four videos—each of whom *depict, or*

---

2 *See, e.g.*, https://www.liveabout.com/what-real-estate-agents-do-2866370 (noting that real estate agents assist home sellers by, among other things, "[d]etermin[ing[ the home's value in the current market"; "[c]oordinat[ing] the process from signing the contract to closing the deal, including scheduling inspections, preparing documents and other items necessary to close"; and "help[ing] the seller to try to get the price they want and to obtain a signed purchase agreement.") (last visited April 18, 2025).

3 https://www.14thpark.net/ (stating "Ready To Sell Or Buy A Property In The Atlanta Area?", and also containing separate options on the contact form for buyers and sellers) (last visited April 17, 2025).

4 *See id.*

*refer to*, Mr. Hardeman—discussing Mr. Hardeman's purported work in selling each of the four homeowner's properties.[5]

62. In the first video, with an individual named Linda Chastain, she indicated that "Tim handled everything."[6]

63. Upon information and belief, all four videos separately allude to 14th & Park *initiating* contact with the respective homeowners, which is consistent with Plaintiffs' respective experiences with Defendants' unsolicited communications.[7]

64. Upon information and belief, 14th & Park seeks to supplant the role of a traditional real estate agent while providing many of the same services as a real estate agent, and in exchange for doing so, are compensated by obtaining a homeowner's property at a reduced price, and thereafter either (1) selling it at an inflated price; (2) assigning the right to purchase the property to a third party in exchange for a fee; or (3) renting the property as a landlord.

65. Upon information and belief, in exchange for providing these services, 14th & Park pays substantially below fair market value for the homes they seek to purchase.

66. As a result, 14th & Park would be (and, upon belief and information,

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

is) compensated for its services in an analogous manner to a real estate agent: after providing services to facilitate the transaction, receiving compensation from the proceeds related to the buying or selling of a home.

67. Therefore, upon information and belief, 14th & Park is a real estate wholesaler, which is a strategy in which a wholesaler seeks to (1) persuade a homeowner to sell their home to the wholesaler at a substantial discount below fair market value, in exchange for a suite of services to ease the sale, then (2) prior to completing the purchase, remarket the property to third-party purchasers or investors, to (3) assign or sell the contract to that investor for a substantial premium, thereby allowing the investor to step into 14th & Park's shoes and acquire the house instead, with the difference in price solely allocated to 14th & Park (or Defendants) as profit, instead of the homeowner.

68. Upon information and belief, 14th & Park regularly attaches a form titled "Special Stipulations" to its purchase contracts, where it indicates the following:

PEACHTREE PROPERTY RESIDENTIAL

**SPECIAL STIPULATIONS**

Georgia REALTORS

2021 Printing

These Special Stipulations are part of the F201 - Purchase and Sale Agreement Agreement dated 08/04/21 | 12:05 PM EDT

*[NOTE: The language set forth in this special stipulation(s) is furnished by the parties and is particular to this transaction.]*

1. All parties understand buyer is a seasoned investor and purchases properties below market value with the intention of making a profit either on the contract assignment, novation, sale, re-sale, rental, fix up, fix and flip, or listing of the property. Seller also understands that in most cases the seller can net a higher amount by selling the property on the retail market. [8]

69. In other words, 14th & Park contracts for the right to assign a purchase contract, as is the norm for wholesalers across the United States.

70. The bottom of this "Special Stipulations" form states that "THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH TIM HARDEMAN IS INVOLVED AS A REAL ESTATE LICENSEE."[9]

71. Notably, Mr. Walsh, as part of PPR, acted as the broker for the transaction reflected in Ex. A.[10]

72. However, per a later contract prior to closing on the original contact, Mr. Hardeman—as part of PPR, served as the homeowner's selling broker in a deal

[8] A copy of a sample purchase contract involving 14th & Park is attached as Exhibit A. Please note that all exhibits contained herein were obtained through the Clerk of Superior Court for Barrow County, Georgia.

[9] Ex. A at 10.

[10] *Id*. at 9.

to sell the same property to a third party, which is either a de-facto assignment of the original transaction, or a direct sale of the homeowner's property to a third party.[11]

73. In either case, 14th & Park facilitated the use of PPR, among other services, to sell the homeowner's property, as it intended to do for Plaintiffs and other homeowners to which 14th & Park directs its telemarketing messages.

74. Thus, in the original contract (Ex. A), 14th & Park was to purchase the homeowner's property for $180,000.00, and in the later contract (Ex. B), 14th & Park—through Mr. Hardeman—arranged to sell the property about twenty days later to a third party for $265,000.00, resulting in an effective fee to the homeowner of $85,000.00 for Defendants' "free" services.[12]

75. This process was effectuated through a "Novation and Indemnification Agreement" that allowed 14th & Park to directly sell the homeowner's property to a third party.[13]

76. And, if the homeowner attempts to avoid paying such an effective fee to 14th & Park after realizing they have been duped, 14th & Park will sue the homeowner to recover damages to account for that effective fee.[14]

---

[11] *See* August 26, 2021 Purchase and Sale Agreement, attached as Exhibit B.

[12] *Compare* Ex. A at 2 *with* Ex. B at 2.

[13] Exhibit C at 2.

[14] *See* Exhibit D (Georgia state court action complaint filed by 14th & Park against a homeowner named Terry Elam). Please note that Ex. D's underlying

77. Notably, 14th & Park's attorney, in one of these lawsuits, represented that 14th & Park listed properties on the Florida Multiple Listing Service ("MLS") and the Georgia MLS, akin to what a typical real estate professional would do in a standard residential property sale.[15]

78. Upon information and belief, Hardeman RE's licensed real agents, who also do work for 14th & Park and PPR, are listed on the Georgia MLS or Florida MLS as Hardeman RE agents; therefore, any listing of properties by 14th & Park would be done through Hardeman RE.

79. As brokers for both 14th & Park and prospective homeowners, PPR derives revenue from a portion of 14th & Park's effective fee, or through a fee directly paid to PPR.

80. Similarly, as the listing firm for both 14th & Park and prospective homeowners, Hardeman RE derives revenue from a portion 14th & Park's effective fee, or through a fee directly paid to Hardeman RE.

81. Therefore, Defendants provide services—appraisal, title and escrow, completion of paperwork, and remarketing to third party buyers—and derive profit off of effective or direct fees, at all points in the transaction with the homeowner.

---

exhibits were not included as part of Ex. D in order to reduce redundancy, as the most-relevant exhibits are separately attached to Plaintiffs' Complaint.

[15] *See* Exhibit E at 2 (14th & Park Demand Letter coinciding with lawsuit reflected in Ex. D).

82. Upon information and belief, Defendants' actions underlying this lawsuit extend generally to all of its real estate operations, including operations derived from its telemarketing efforts.

83. At minimum, Tim Hardeman, Stefan Walsh, and Andrew Polak perform work for each of the Defendants, and given their extensive involvement with each defendant, they have actual knowledge as to 14th & Park's telemarketing operations due to their role in acquiring properties to wholesale derived from those telemarketing efforts.

84. Therefore, upon information and belief, given the significant overlap of ownership, employees, and management between Defendants, the sharing of offices, the fact that they operate within the same real estate arena, and are involved in representative transactions resulting from the above telemarketing operations, upon information and belief, 14th & Park, Hardeman RE, and PPR operate their telemarketing campaigns as a joint enterprise.

85. Moreover, upon information and belief, to the extent that a consumer expresses interest in selling their home (or buying one) in response to 14th & Park's telemarketing messages, 14th & Park then refers those consumers to Hardeman RE or PPR for conventional real estate representation, to be brokered by PPR or Hardeman RE.

86. Upon information and belief, Hardeman RE and/or PPR have

knowledge of—and focus their business on—the same real estate investment solicitations that 14th & Park does, and is therefore liable as either a joint sender of the communications at issue, or because 14th & Park had actual or apparent authority to send those messages on its behalf.

87. Moreover, Hardeman RE and/or PPR ratified 14th & Park's conduct by both accepting the benefits of 14th & Park's transactions, by accepting compensation for transactions funneled to Hardeman RE and PPR, or fees for transactions that Hardeman RE and/or PPR facilitates for 14th & Park, and by openly touting 14th & Park's actions to promote Hardeman RE and/or PPR to consumers.

88. Moreover, Mr. Hardeman also operates a real estate wholesaling website, https://www.timhardeman.com, which further demonstrates his and Hardeman RE's knowledge and endorsement of this telemarketing and real estate wholesaling enterprise.

89. In that same website, Mr. Hardeman touts the entire Hardeman RE team on its "About Us" page.[16]

90. Moreover, on that same website, Mr. Hardeman uses the same customer

---

[16] *Compare* https://www.timhardeman.com/about-us/ (last visited April 18, 2025) *with* https://www.linkedin.com/posts/hardeman-real-estate_say-hello-to-the-people-behind-hardeman-real-activity-7219719628250361856-ugqQ?utm_source=share&utm_medium=member_desktop&rcm=ACoAAAj9_v4Beo-pY9rNZ5_T9MPSdbFCH74ynlY (last visited April 18, 2025).

testimonial videos as 14th and Park's website.[17]

91. Lastly, Hardeman RE specifically touts that it "specialize[s] in" direct purchase of real estate from homeowners via direct cash offers:[18]




92. Plaintiffs believe they have received numerous telemarketing and solicitation calls from Defendants that were delivered with the use of an artificial or prerecorded voice, as the voice messages receive match those uploaded by others to

[17] *Compare* n.3 *with* https://www.timhardeman.com/reviews/ (last visited April 18, 2025).

[18] https://www.facebook.com/HardemanRealEstate/ (last visited April 18, 2025).

the internet.[19]

93. Upon information and belief, as real estate agencies, Hardeman RE and/or PPR sought to represent Plaintiffs in either a purchase of a new home or a sale of their home, in exchange for a commission or other valuable consideration.

94. The FCC's guidance is particularly illuminating here. Congress charged the FCC with implementing the Federal Do-Not-Call rules. 47 U.S.C. § 227(c)(1). In 2005, the National Association of Realtors petitioned the FCC for an exemption from the Do-Not-Call rules' definition of "solicitation" for calls made by real estate agents to property owners with lapsed real estate listings, where the real estate agent solicits their services to a prospective seller. *In the Matter of Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 20 F.C.C. Rcd. 3788 (2005). In interpreting the definition of "telephone solicitation," the FCC rejected this proposed exemption, and concluded "that a telephone solicitation would include calls by real estate agents to property owners for the purpose of offering their services to the owner, whether the property listing has lapsed or not." *Id*. at 3793-94.

95. In other words, the FCC has expressly declared that Defendants'

---

[19] *See, e.g.* https://directory.youmail.com/phone/678-672-3346 (containing virtually identical voice messages as to those received by Plaintiff Johnson) (last visited April 18, 2025); https://directory.youmail.com/phone/678-941-1880 (same) (last visited April 18, 2025); https://directory.youmail.com/phone/678-967-0149 (same) (last visited April 18, 2025).

conduct qualifies as a regulated telephone solicitation which accordingly must adhere to both 1) the DNC Registry; and 2) the requirement that a telemarketer obtain prior express written consent before sending any telemarketing or solicitation messages.

96. Plaintiffs did not give Defendants prior express consent or prior express written consent to place calls to their cellular telephone numbers by using an artificial or prerecorded voice, or by any other means.

97. Upon information and belief, and in light of the nature and character of the voice messages at issue, including the delivery of repeated identical voicemail messages, Defendants used a prerecorded voice to deliver calls to Plaintiffs' cellular telephone numbers.

98. Upon information and belief, Defendants placed the calls to Plaintiffs' cellular telephone numbers for non-emergency purposes.

99. Upon information and belief, Defendants placed the calls to Plaintiffs' cellular telephone numbers voluntarily.

100. Upon information and belief, Defendants placed the calls to Plaintiffs' cellular telephone numbers under their own free will.

101. Upon information and belief, Defendants had knowledge that they were using an artificial or prerecorded voice to place their calls to Plaintiffs' cellular telephone numbers.

102. Upon information and belief, Defendants intended to use an artificial or prerecorded voice to place calls to Plaintiffs' cellular telephone numbers.

103. The purpose of the solicitation calls at issue was to advertise and to market Defendants' business or services.

104. Additionally, upon information and belief, Defendants also collect motivated seller consumer data and resell that information to investors, including by way of executing assignment contracts.

105. As a result, 14th & Park either (1) solicited Plaintiffs to sell their home(s) to them at a discount in order for Defendants to resell or rent Plaintiffs' home(s); (2) solicited Plaintiffs to submit their information to Defendants' lead generation service and, if Plaintiffs expressed an interest in selling their home(s), Defendants would then sell that via an assignment contract or immediate purchase-and-resale to investors for a profit; or (3) if Plaintiffs did not want to sell their home(s) but otherwise expressed interest in a represented real estate transaction, solicited Plaintiffs to use Hardeman RE and/or PPR for "conventional" real estate brokerage representation.

106. Plaintiffs did not give Defendants prior express invitation or permission to place advertising or telemarketing calls to their cellular telephone numbers.

107. Plaintiffs suffered actual harm as a result of the communications at issue in that they each suffered an invasion of privacy, an intrusion into their lives,

and private nuisances.

108. Upon information and belief, Defendants knew, or should have known, that Plaintiffs registered their cellular telephone numbers with the DNC Registry.

## Class Action Allegations

109. Plaintiffs bring this action under Federal Rule of Civil Procedure 23, and as representatives of the following classes (the "Classes"):

**Robocall Class:**

> All persons and entities throughout the United States (1) to whom 14th & Park, LLC, Hardeman Real Estate, LLC, or Peachtree Property Residential, LLC placed, or caused to be placed, a call directed to a number assigned to a cellular telephone service, but not assigned to a customer of 14th & Park, LLC, Hardeman Real Estate, LLC, or Peachtree Property Residential, LLC, (2) by using an artificial or prerecorded voice, (3) from four years preceding the date of this complaint through the date of class certification.

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom 14th & Park, LLC, Hardeman Real Estate, LLC, or Peachtree Property Residential, LLC placed, or caused to be placed, more than one call, or delivered, or caused to be delivered, more than one text message, within a 12-month period, promoting 14th & Park, LLC's, Hardeman Real Estate, LLC's, or Peachtree Property Residential, LLC's, or their business partners' goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before 14th & Park, LLC, Hardeman Real Estate, LLC, or Peachtree Property Residential, LLC placed, or caused to be placed, at least two of the telephone calls, or delivered, or caused to be delivered at least two text messages, within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

110. Excluded from the Classes are Defendants, their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

111. Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

112. The exact number of members of the Classes are unknown to Plaintiffs at this time, and can be determined only through appropriate discovery.

113. The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

114. In addition, the members of the Classes are identifiable in that, upon information and belief, their telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties, including members of the Classes.

115. Plaintiffs' claims are typical of the claims of the members of the Classes.

116. As they did for all members of the Robocall Class, Defendants placed telephone calls by using an artificial or prerecorded voice to Plaintiffs' cellular telephone numbers absent prior express consent.

117. As they did for all members of the Federal Do-Not-Call Registry Class,

Defendants delivered solicitation telephone calls to Plaintiffs' telephone numbers more than thirty days after Plaintiffs registered their cellular telephone numbers with the DNC Registry.

118. Plaintiffs' claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

119. Plaintiffs' claims are based on the same theories as are the claims of the members of the Classes.

120. Plaintiffs suffered the same injuries as the members of the Classes.

121. Plaintiffs will fairly and adequately protect the interests of the members of the Classes.

122. Plaintiffs' interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

123. Plaintiffs will vigorously pursue the claims of the members of the Classes.

124. Plaintiffs have retained counsel experienced and competent in class action litigation.

125. Plaintiffs' counsel will vigorously pursue this matter.

126. Plaintiffs' counsel will assert, protect, and otherwise represent the members of the Classes.

127. The questions of law and fact common to the members of the Classes

predominate over questions that may affect individual members of the Classes.

128. Issues of law and fact common to all members of the Classes include:

a. For the Robocall Class, Defendants' practice of placing telephone calls to cellular telephone numbers, with the use of an artificial or prerecorded voice, absent prior express consent;

b. For the Federal Do-Not-Call Registry Class, Defendants' practice of placing telephone calls, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

c. Defendants' conduct, pattern, and practice as it pertains to delivering artificial or prerecorded voice solicitation messages;

d. Whether Hardeman RE or PPR are responsible for the conduct of 14th & Park as either a joint venture, or based on agency theories;

e. Defendants' violations of the TCPA; and

f. The availability of statutory penalties.

129. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

130. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

131. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

132. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

133. These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

134. The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

135. The pursuit of Plaintiffs' claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

136. There will be no extraordinary difficulty in the management of this action as a class action.

137. Defendants acted or refused to act on grounds generally applicable to

the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(b)(1)(A)(iii)**
**On behalf of the Robocall Class**

138. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-137.

139. Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) by delivering artificial or prerecorded voice messages to Plaintiffs' cellular telephone numbers without prior express consent.

140. As a result of Defendants' violations of 47 U.S.C. § 227(b)(1)(A)(iii), Plaintiffs, and the members of the Robocall Class, are entitled to damages in an amount to be proven at trial.

141. In the alternative, 14th & Park violated 47 U.S.C. § 227(b)(1)(A)(iii) by delivering artificial or prerecorded voice messages to Plaintiffs' cellular telephone numbers without prior express consent, and Hardeman RE and/or PPR are liable for 14th & Park's violations because (1) Hardeman RE and/or PPR are owned and operated by the same persons, and conducting the same business; (2) Hardeman RE and/or PPR ratified 14th & Park's conduct by either accepting leads generated by 14th & Park's telemarketing campaign, agreeing to receive revenue that arouse out of 14th & Park's telemarketing campaign, and promoting 14th & Park's conduct in its communications to consumers; and (3) 14th & Park acted with actual authority

on behalf of Hardeman RE and/or PPR in delivering artificial or prerecorded voice messages to consumers' cellular telephone numbers absent prior express consent.

142. As a result, Hardeman RE and/or PPR would also be vicariously liable for 14th & Park's conduct.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

143. Plaintiffs repeat and re-allege each and every factual allegation contained in paragraphs 1-137.

144. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

145. Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

146. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone

subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

147. Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiffs and the class members who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

148. Defendants violated 47 U.S.C. § 227(c)(5) because they placed, or caused to be placed, to Plaintiffs and members of the Federal Do-Not-Call Registry Class, more than one solicitation call in a 12-month period in violation of 47 C.F.R. § 64.1200.

149. In the alternative, 14th & Park violated 47 U.S.C. § 227(c)(5) by delivering more than one solicitation call in a 12-month period in violation of 47 C.F.R. § 64.1200(c), and Hardeman RE and/or PPR are liable for 14th & Park's violations because (1) Hardeman RE and/or PPR are owned and operated by the same persons, and conducting the same business; (2) Hardeman RE and/or PPR ratified 14th & Park's conduct by either accepting leads generated by 14th & Park's telemarketing campaign, agreeing to receive revenue that arouse out of 14th & Park's telemarketing campaign, and promoting 14th & Park's conduct in its communications to consumers; and (3) 14th & Park acted with actual authority on

behalf of Hardeman RE and/or PPR in delivering solicitation calls in violation of 47 C.F.R. § 64.1200(c).

150. As a result, Hardeman RE and/or PPR would also be vicariously liable for 14th & Park's conduct.

**Prayer for Relief**

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

a. Determining that this action is a proper class action;

b. Designating Plaintiffs as class representatives of the proposed Robocall Class under Federal Rule of Civil Procedure 23;

c. Designating Plaintiffs as class representatives of the proposed Federal Do-Not-Call Registry Class under Federal Rule of Civil Procedure 23;

d. Designating Plaintiffs' counsel as class counsel under Federal Rule of Civil Procedure 23;

e. Adjudging and declaring that Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii) and 47 U.S.C. § 227(c)(5);

f. Enjoining Defendants from continuing their violative behavior, including placing telephone calls with the use of an artificial or prerecorded voice to consumers without prior express consent, and placing solicitation calls to telephone numbers registered

with the DNC Registry for at least thirty days;

g. Awarding Plaintiffs and the members of the Robocall Class damages under 47 U.S.C. § 227(b)(3)(B);

h. Awarding Plaintiffs and the members of the Robocall Class treble damages under 47 U.S.C. § 227(b)(3)(C);

i. Awarding Plaintiffs and the members of the Federal Do-Not-Call Registry Class damages under 47 U.S.C. § 227(c)(5)(B);

j. Awarding Plaintiffs and the members of the Federal Do-Not-Call Registry Class treble damages under 47 U.S.C. § 227(c)(5)(C);

k. Awarding Plaintiffs and the members of the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

l. Awarding Plaintiffs and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

m. Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs each demand a trial by jury of any and all triable issues.

Date: May 6, 2025

*/s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin
Georgia Bar No. 707419
rachel@beal.law
Beal Sutherland Berlin & Brown LLC
2200 Century Parkway NE
Suite 100
Atlanta GA 30345
Telephone: (404) 476-5305

Bryan A. Giribaldo* (to seek admission pro hac vice)
Alex D. Kruzyk* (to seek admission pro hac vice)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd., Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
bgiribaldo@pkglegal.com
akruzyk@pkglegal.com

*Counsel for Plaintiffs and the proposed classes*